## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH CHARLEY,<br>825 Boston Avenue<br>Elyria, OH 44035 | ) ) ) ) | Case No.: 1:26-cv-01780-DAP |
| Plaintiff, | ) ) ) | JUDGE: |
| v. | ) ) ) | |
| CITY OF ELYRIA<br>c/o Amanda R. Deery, *Law Director*<br>131 Court Street, Elyria, OH 44035, | ) ) ) ) | **FIRST VERIFIED AMENDED<br>COMPLAINT** |
| DAVE ROTHGERY, (*sued  individually<br>and in his official capacity)*<br>Central Maintenance Garage<br>851 Garden Street, Elyria, Ohio 44035 | ) ) ) ) ) | |
| CHRIS PYANOWSKI, *Safety Director<br>(sued individually and in his official<br>Capacity)* 131 Court Street, Suite 301<br>Elyria, OH 44035 | ) ) ) ) ) | |
| GINA BAMBI ROTHGERY, *President<br>of the Local Labor Union* (*sued<br>individually and in her official capacity)*)<br>131 Court Street, Suite 301<br>Elyria, OH 44035 | ) ) ) ) ) ) | |
| DAN HACKATHORN, *Vice President<br>of the Local Labor Union* (*sued<br>individually and in her official capacity*))<br>131 Court Street, Suite 301<br>Elyria, OH 44035 | ) ) ) ) ) ) | |
| JOHN DOES 1-5, JANES DOES 1-5<br>(*sued individually and in their official<br>capacity*);<br>Defendants. | ) ) ) ) ) | |

## VERIFIED COMPLAINT AND JURY DEMAND

1

## PRELIMINARY STATEMENT

This is a civil rights action brought by Plaintiff Joseph Charley, an African American male employed as a Field Crewman II in the Water Distribution Department of the City of Elyria, Ohio. For nearly seven years — from May 2018 through at least April 2025 — Plaintiff was subjected to a sustained, supervisor-driven campaign of racial and sexually explicit harassment by Defendant Dave Rothgery, the Operations Manager who served as Plaintiff's direct supervisor and held unchecked authority over Plaintiff's employment. During the entire period of harassment, Plaintiff was the only Black employee in the Water Distribution Department.

Plaintiff endured the harassment in silence because Rothgery's position of authority and demonstrated willingness to use it punitively made any complaint too dangerous. When Plaintiff finally attempted to seek redress through the union in October 2024, the union president — Rothgery's own sister-in-law — immediately disclosed Plaintiff's complaint to Rothgery rather than processing it. Rothgery then convened a recorded meeting in which he issued veiled threats, used a racial epithet, and made clear that Plaintiff would suffer consequences for having complained outside channels Rothgery controlled. Within one day of Plaintiff's complaint and before the retaliatory meeting had even occurred, Defendants began manufacturing a paper trail of disciplinary actions against Plaintiff.

The retaliation escalated throughout 2025. Defendants subjected Plaintiff to a baseless criminal referral for alleged water theft, triggered by a city utility employee's spouse who accessed Plaintiff's confidential water records without authorization and fed that information to Rothgery through the union. When Plaintiff was injured at work, Defendants — in sharp contrast to their treatment of white coworkers — refused to

accommodate his work restrictions, forcing him off work for the remainder of his employment. Defendants ultimately terminated Plaintiff's salary continuation in January 2026, effectively completing his constructive discharge. This action seeks redress under the Constitution and laws of the United States and the State of Ohio for what is, in substance, a racially motivated campaign to harass, marginalize, intimidate, and constructively discharge the only Black employee in the department.

**PARTIES**

1. Plaintiff Joseph Charley is an African American male who, at all times relevant to this Complaint, was a resident of Elyria, Lorain County, Ohio, and was employed by Defendant City of Elyria as a Field Crewman II in the Water Distribution Department. Plaintiff brings this action in his individual capacity.

2. Defendant City of Elyria ("the City") is a municipal corporation organized and existing under the laws of the State of Ohio, with its principal offices located at 131 Court Street, Elyria, Ohio 44035. At all relevant times, the City has employed more than fifteen (15) employees and constitutes an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Ohio Revised Code Chapter 4112. The City is a "political subdivision" subject to suit under 42 U.S.C. § 1983, consistent with *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).

3. Defendant Dave Rothgery ("Rothgery") is, or was at all relevant times, the Operations Manager of the City of Elyria's Water Distribution Department and Plaintiff's direct supervisor. Rothgery is sued in his individual capacity

3

and in his official capacity as Operations Manager. At all relevant times, Rothgery acted under color of state law within the meaning of 42 U.S.C. § 1983. Rothgery is a natural person residing in Lorain County, Ohio, or whose last known address is in Lorain County, Ohio.

4. Defendant Chris Pyanowski ("Pyanowski") is, or was at all relevant times, the Safety-Service Director for the City of Elyria. Pyanowski is sued in his individual capacity and in his official capacity as Safety-Service Director. At all relevant times, Pyanowski acted under color of state law within the meaning of 42 U.S.C. § 1983 and had final or delegated decision-making authority over employment actions affecting Plaintiff, including the referral of Plaintiff's case to law enforcement, the denial of light-duty accommodation, and the termination of salary continuation.

5. Defendant Gina Bambi Rothgery ("Gina Rothgery") is, or was at all relevant times, the president of the local labor union representing employees of the City of Elyria's Water Distribution Department, including Plaintiff. Gina Rothgery is also the sister-in-law of Defendant Dave Rothgery. Gina Rothgery is sued in her individual and official capacity. At all relevant times, Gina Rothgery acted jointly and in concert with Defendant Dave Rothgery, a state actor, thereby acting under color of state law within the meaning of 42 U.S.C. § 1983, and participated in an unlawful conspiracy to retaliate against Plaintiff for engaging in protected activity.

6. Defendant Dan Hackathorn ("Hackathorn") is, or was at all relevant times, the vice president of the same labor union described in paragraph 5.

4

Hackathorn is sued in his individual and official capacity. At all relevant times, Hackathorn acted jointly and in concert with Defendants Dave Rothgery and Gina Rothgery, thereby acting under color of state law within the meaning of 42 U.S.C. § 1983, and participated in the unlawful conspiracy to retaliate against and deprive Plaintiff of his civil rights.

7. Defendants John Does 1-5 are individuals whose identities are presently unknown to Plaintiff, who participated in, facilitated, directed, or authorized one or more of the unlawful acts alleged herein, including but not limited to the unauthorized access to and disclosure of Plaintiff's confidential utility account records. Plaintiff will seek leave to amend this Complaint to substitute the true names of John Doe Defendants upon discovery of their identities.

8. At all relevant times, Defendants Dave Rothgery, Chris Pyanowski, Gina Rothgery, and Hackathorn were employees, officers, or agents of the City of Elyria and acted within the scope of their employment or official functions, and/or acted jointly and in concert with the City's agents, servants, and employees. Their acts and omissions are attributable to the City through respondeat superior and under the Monell doctrine.

9. At all relevant times, Defendants Dave Rothgery, Chris Pyanowski, Gina Rothgery, and Hackathorn acted under color of state law as that term is used in 42 U.S.C. §§ 1983 and 1985, and each participated in, directed, authorized, ratified, or failed to prevent the constitutional and statutory violations alleged herein.

**JURISDICTION AND VENUE**

10. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction), as this action arises under the Constitution and laws of the United States, including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; 42 U.S.C. § 1983; and 42 U.S.C. § 1985(3).

11. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy as Plaintiff's federal claims under Article III of the United States Constitution. All state law claims arise from the same nucleus of operative fact as the federal claims, and it would be most efficient and convenient to resolve all claims in a single proceeding.

12. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because Defendants reside or maintain their principal offices in this judicial district, and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district within the City of Elyria, Lorain County, Ohio.

13. Pursuant to Northern District of Ohio Local Civil Rule 3.8, this action is properly assigned to the Eastern Division because the claim arose in Lorain County, Ohio, which is in the Eastern Division.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

14. Plaintiff has satisfied all administrative prerequisites to filing this action with respect to his Title VII claims and his state law claims under Ohio Revised Code Chapter 4112.

15. On August 6, 2025, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), bearing EEOC Charge Number 532-03020. The Charge alleged race discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The Charge also placed the EEOC, and thereby the Defendant City, on notice of the full course of discriminatory and retaliatory conduct alleged herein, including the hostile work environment, the pretextual disciplinary actions, the discriminatory refusal of light-duty accommodation, and the baseless water theft investigation.

16. The EEOC dual-filed Plaintiff's Charge with the Ohio Civil Rights Commission ("OCRC") pursuant to the worksharing agreement between those agencies and 29 C.F.R. § 1601.13, thereby satisfying any applicable exhaustion requirement under Ohio Revised Code § 4112.08.

17. On May 6, 2026, the EEOC issued Plaintiff a Notice of Right to Sue with respect to Charge Number 532-03020. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue, in compliance with 42 U.S.C. § 2000e-5(f)(1).

18. Plaintiff's claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985(3) do not require exhaustion of administrative remedies, and may be brought directly in this Court.

19. The discriminatory and retaliatory acts alleged herein constitute a continuing violation. The pattern of harassment, discrimination, and retaliation that began in May 2018 was ongoing, interconnected, and part of a single discriminatory course of conduct that continued through at least January 24, 2026. Accordingly, all acts within the continuing violation are timely, and Plaintiff is not time-barred from presenting evidence of any act that was part of the continuing course of discriminatory and retaliatory conduct.

## FACTUAL ALLEGATIONS

### A.  Background and Employment

20. Plaintiff Joseph Charley is an African American male. He was hired by the City of Elyria's Water Distribution Department on May 29, 2018, and was employed as a Field Crewman II throughout the period relevant to this Complaint. In that role, Plaintiff performed skilled utility work involving the installation, maintenance, and repair of water distribution infrastructure throughout the City of Elyria.

21. At all times relevant to this Complaint, Plaintiff was the only Black employee in the City of Elyria's Water Distribution Department. The department's workforce was and remains overwhelmingly white.

22. Defendant Dave Rothgery served as the Operations Manager of the Water Distribution Department and held the highest supervisory authority within that department at the operational level. Rothgery directly supervised Plaintiff's day-to-day work activities. Rothgery had authority to assign, supervise, evaluate, discipline, and recommend Plaintiff for

8

adverse employment actions, including termination. As Plaintiff's direct supervisor, Rothgery controlled the material terms and conditions of Plaintiff's employment.

23. Plaintiff's work performance was satisfactory to Defendant throughout the period of his employment prior to his October 2024 complaint. Prior to that complaint, Plaintiff's only disciplinary history consisted of: (a) a one-day suspension in December 2019 for failing to report a traffic accident; and (b) two written warnings in August 2024 concerning a parking violation and the use of sick leave. Prior to October 24, 2024, Plaintiff had never been issued a written warning for tardiness.

24. Plaintiff was, at all relevant times, qualified to perform the essential functions of his position as Field Crewman II and met or exceeded the legitimate performance expectations of the City of Elyria.

**B. The Sustained Racial and Sexual Harassment Campaign (May 2018 – April 2025)**

25. Beginning on or about the time Plaintiff commenced employment in May 2018, and continuing through at least April 2025 — a period of approximately seven (7) years — Defendant Dave Rothgery subjected Plaintiff to unwelcome, offensive, and harassing communications via online platforms and electronic media. These communications were unsolicited, were directed at Plaintiff as Rothgery's subordinate, and were transmitted by Rothgery using his position as Operations Manager to make Plaintiff feel compelled to receive and tolerate them.

26. The communications sent by Rothgery to Plaintiff contained racially offensive images, messages, and content targeting Black individuals and African American culture, including but not limited to explicitly racist memes, racially degrading imagery, and content that stereotyped, dehumanized, or mocked African American people. This conduct was directed at Plaintiff specifically because he is African American.

27. The communications sent by Rothgery to Plaintiff also contained sexually explicit images, videos, and messages of a graphic and offensive nature. This content was sexually harassing and created an offensive and abusive environment for Plaintiff.

28. Rothgery's transmission of racial and sexually explicit content to Plaintiff was not an isolated occurrence. The conduct was frequent, recurring, and pervasive, occurring regularly throughout the approximately seven-year period from May 2018 through at least April 2025. The volume, frequency, and duration of the harassment were such that it permeated Plaintiff's employment relationship with Defendants.

29. Plaintiff did not initiate, invite, solicit, respond to, or encourage any of the racial or sexually explicit communications sent by Rothgery. Plaintiff found the communications unwelcome, offensive, and deeply disturbing. Plaintiff was powerless to refuse them without risking his employment.

30. Plaintiff felt unable to complain about, refuse, or object to the harassing communications because Dave Rothgery was his direct supervisor with demonstrated authority over his job assignments, performance evaluations, and potential disciplinary actions. Plaintiff reasonably feared

10

that complaining about Rothgery's conduct would result in retaliation against him, including adverse disciplinary action or termination. This fear was well-founded and was ultimately vindicated by Defendants' retaliatory conduct after Plaintiff's October 2024 complaint.

31. The racial harassment directed at Plaintiff was not limited to Rothgery's online communications. Throughout Plaintiff's employment, racial jokes, racial comments, and racially offensive remarks were commonplace in Plaintiff's workplace. This broader workplace culture of racial hostility was known to or readily knowable by the City of Elyria through the exercise of reasonable oversight, and the City took no corrective action.

32. The combined effect of the racial harassment, sexually explicit communications, and racially hostile workplace culture created a work environment that was intimidating, hostile, offensive, and abusive — conditions that substantially interfered with Plaintiff's ability to perform his work and that no reasonable employee should be required to endure. Plaintiff suffered significant emotional distress, anxiety, humiliation, and loss of enjoyment of life as a result of the hostile work environment created and sustained by Rothgery's conduct with the City's knowledge and acquiescence.

33. The City of Elyria knew or should have known of Rothgery's pattern of racial and sexual harassment. The harassment persisted for approximately seven years under Rothgery's supervision of Plaintiff — the only Black employee in the department. The extended duration, pervasiveness, and severity of the harassment are facts that would have been discoverable

11

through any reasonable system of supervisory oversight and anti-discrimination compliance. The City failed to implement, enforce, or effectively communicate any anti-harassment policy in a manner that would have prevented or stopped the harassment.

34. The City of Elyria maintained no effective mechanism by which Plaintiff could safely report the harassment. The sole grievance procedure available to Plaintiff ran through the union — whose president, at the time Plaintiff attempted to use it, was Rothgery's own sister-in-law. The conflict of interest inherent in this structure rendered the available grievance process inadequate and non-functional as a check on Rothgery's conduct. The City's failure to maintain a functional, independent, and safe reporting mechanism for harassment directly enabled the prolonged harassment Plaintiff experienced.

## C. The October 2024 Complaint and the Union's Facilitation of Retaliation

35. In September or October 2024, Defendant Dave Rothgery unilaterally removed chairs from the mezzanine area of the Water Distribution Department workplace, disposing of what Plaintiff reasonably understood to be city-owned property without authorization. Plaintiff recognized that the disposal of city property without authorization potentially violated applicable city policies, rules, or ordinances governing the disposition of public property, including potentially Ohio Revised Code § 2921.41 (theft in office) or analogous provisions.

36. On October 23, 2024, Plaintiff contacted Defendant Gina Bambi Rothgery in her capacity as union president for the purpose of filing a formal grievance against Dave Rothgery regarding the unauthorized disposal of city property. Plaintiff's complaint to the union president constituted a protected activity under applicable law, including Title VII, Ohio Revised Code § 4112.02, and the First Amendment to the United States Constitution, as Plaintiff was opposing what he reasonably and in good faith believed to be unlawful conduct and was engaging in speech about a matter of public concern — namely, the misappropriation of public property by a city official.

37. Defendant Gina Bambi Rothgery is the sister-in-law of Defendant Dave Rothgery. This familial relationship between the union president and the supervisor against whom Plaintiff sought to file a grievance constituted an inherent and disqualifying conflict of interest that rendered the union's processing of Plaintiff's grievance structurally defective from the outset.

38. Despite Plaintiff's request to file a formal grievance, Gina Rothgery refused to accept or process Plaintiff's grievance without first speaking to Dave Rothgery. Rather than observing even the most basic principle of confidentiality owed to a complaining employee, Gina Rothgery disclosed the substance of Plaintiff's complaint to Dave Rothgery — the very supervisor against whom the complaint was filed — before taking any formal action.

39. Gina Rothgery's disclosure of Plaintiff's complaint directly to Dave Rothgery, rather than initiating a formal and neutral grievance process,

constituted a breach of her obligations as union president and a violation of Plaintiff's right to use the grievance process free from retaliation. It directly enabled the retaliatory course of conduct that followed.

40. Gina Rothgery and Defendant Dan Hackathorn, the union vice president, then jointly arranged a meeting between Plaintiff, Dave Rothgery, and Gary Kothe — rather than processing Plaintiff's grievance through established procedures. Hackathorn's participation in arranging this meeting, in coordination with Gina Rothgery and Dave Rothgery, made Hackathorn a knowing participant in the scheme to suppress Plaintiff's complaint and intimidate him.

## D. The October 25, 2024 Retaliatory Meeting and Recorded Threats

41. On October 25, 2024, Plaintiff met with Dave Rothgery and Gary Kothe in a meeting arranged by Gina Rothgery and Hackathorn. The meeting, ostensibly convened to discuss Plaintiff's complaint about the chairs, functioned instead as an opportunity for Rothgery to confront, intimidate, and threaten Plaintiff for having raised a complaint through the union.

42. Plaintiff audio-recorded the October 25, 2024 meeting without announcing the recording, in compliance with Ohio's one-party consent law, Ohio Revised Code § 2933.52. The recording constitutes direct evidence of the retaliatory and racially charged conduct described herein and corroborates Plaintiff's account in material respects.

43. During the October 25, 2024 meeting, Rothgery expressed overt anger that Plaintiff had complained to his sister-in-law. Rothgery's anger at the complaint itself — rather than at any substantive issue — reveals his intent

14

to suppress internal complaints and retaliate against those who made them.

44. Rothgery told Plaintiff that "things could have gotten worse for him" — a direct and unambiguous statement that Plaintiff's decision to complain carried the risk of further adverse consequences. This statement, delivered by Plaintiff's direct supervisor in the presence of a third party, constitutes a retaliatory threat within the meaning of Title VII, 42 U.S.C. § 2000e-3, and related provisions.

45. Rothgery also told Plaintiff that Plaintiff needed to "look out for Joe Charley Incorporated" — a dismissive statement designed to isolate Plaintiff and signal that the institution would not protect him, that Plaintiff had only himself to rely on, and that challenging Rothgery would have professional consequences.

46. In the audio-recorded meeting, Rothgery stated: "Our shit stays in our fucking house, and of course, going off the reservation and hearing it from my fucking sister-in-law and shit, it pisses me off." This statement contains multiple revealing elements: (a) Rothgery demanded workplace silence about internal conduct, establishing the culture of concealment that had enabled seven years of harassment; (b) the phrase "going off the reservation" is a racially charged expression widely recognized as derogatory to Native Americans and, in context, functioned as a racially charged reprimand directed at Plaintiff — the only Black employee in the department — for having gone outside the chain of command Rothgery

15

controlled; and (c) the statement confirms Rothgery's awareness of and anger about Plaintiff's complaint.

47. The audio recording also captures Rothgery admitting that he removed the chairs and asserting his authority as Operations Manager to dispose of city property — an admission relevant to establishing both the wrongfulness of his conduct and the legitimacy of Plaintiff's complaint.

48. The threats and intimidating statements made by Rothgery at the October 25, 2024 meeting would dissuade a reasonable employee from making or supporting charges of discrimination, in violation of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), the First Amendment, and related statutes.

### E.  Immediate and Escalating Retaliatory Discipline

49. The temporal connection between Plaintiff's October 23, 2024 complaint and the sudden commencement of disciplinary action against him is striking and constitutes powerful circumstantial evidence of retaliatory motive.

50. On October 24, 2024 — one (1) day after Plaintiff's complaint to the union president and one (1) day before the retaliatory meeting — Plaintiff received his first-ever written warning for tardiness, based on allegedly arriving late three consecutive days. Plaintiff had never previously been written up for tardiness during his approximately six and a half years of employment with the City.

51. The issuance of a tardiness warning on October 24, 2024 — the day immediately after Plaintiff's complaint and the day before the meeting at

which Rothgery admitted his anger at the complaint — establishes by temporal proximity that the warning was retaliatory in nature.

52. On November 6, 2024 — approximately two weeks after Plaintiff's complaint — Plaintiff received another written warning, this time for calling off sick without sufficient leave time. The issuance of this second warning within weeks of Plaintiff's complaint, and in close temporal proximity to the first, further establishes a pattern of post-complaint pretextual discipline.

53. The pretextual nature of the post-complaint disciplinary actions is confirmed by Defendants' discriminatory treatment of similarly situated white coworkers. Specifically, Gary Broud, a white coworker in the Water Distribution Department, was not issued warnings for tardiness despite arriving late to work on one or more occasions. The differential enforcement of attendance policies against Plaintiff — the only Black employee and the employee who had complained about his supervisor — and not against similarly situated white employees demonstrates that the disciplinary actions were pretextual.

54. Prior to Plaintiff's October 2024 complaint, Defendants had not subjected Plaintiff to the same level of scrutiny or enforcement of attendance-related policies. The sudden imposition of attendance discipline — specifically targeting Plaintiff immediately after his complaint — demonstrates that the disciplinary actions served as a pretext for retaliation rather than reflecting legitimate enforcement concerns.

17

55. The escalating pattern of pretextual discipline following Plaintiff's October 2024 complaint is consistent with a strategy to manufacture a negative employment record that could be used to justify further adverse employment actions, up to and including constructive or actual discharge.

### F. The Water Theft Investigation: Selective Prosecution and Abuse of Process

56. On or about April 2, 2025, the City of Elyria shut off water service at the residence where Plaintiff resided due to alleged delinquency or nonpayment. Critically, the water account at Plaintiff's residence was not held in Plaintiff's name. Plaintiff did not have a contractual relationship with the City's water utility for the account at that address.

57. On or about April 3, 2025, a spouse of a Water Distribution Department employee — who worked in the City of Elyria's utilities billing office — accessed Plaintiff's water consumption records without authorization or legitimate business purpose and provided that information to her spouse. Her spouse, also an employee of the City's Water Distribution Department, then shared the information with union officials. The information ultimately reached Defendant Dave Rothgery.

58. The unauthorized access to and disclosure of Plaintiff's water utility account information by a city employee for the purpose of using it against a coworker constituted an improper, unauthorized, and unlawful use of the employee's access to city records. Ohio Revised Code § 4933.28 and applicable utility privacy regulations restrict the use and disclosure of utility customer information. The disclosure was not made for any

18

legitimate utility purpose and was used to initiate a racially motivated retaliatory investigation against Plaintiff.

59. Based on information obtained through this improper chain of disclosure, Defendant Dave Rothgery was made aware on or about April 3, 2025, of the allegation that an unnamed individual in the Water Distribution Department was improperly obtaining water service. The allegation was directed at Plaintiff, the only Black employee in the department, despite the water account not being in Plaintiff's name.

60. On April 11, 2025, Defendant Chris Pyanowski, in his capacity as Safety-Service Director, convened an investigatory meeting with Plaintiff to address the water theft allegations. At the meeting, Plaintiff denied tampering with the water meter and explicitly informed Defendants that the water account was not held in his name — information that was material to any good-faith investigation of the allegations.

61. Despite Plaintiff's clear and direct denial, and despite the fact that the water account was admittedly not in Plaintiff's name, Defendants — including Pyanowski acting in his official capacity — referred the matter to the Elyria Police Department, resulting in Plaintiff being arrested.

62. No evidence has been identified, nor was any plausibly believed to exist, establishing that Plaintiff had tampered with a water meter or otherwise stolen water. The decision to refer the matter to law enforcement, despite the lack of sufficient basis, reflects retaliatory animus and was motivated by Plaintiff's race and his prior protected activity.

63. Defendants' decision to pursue a criminal referral against Plaintiff, the only Black employee in the Water Distribution Department, based on unsubstantiated allegations, when no similarly situated white employee was subjected to investigation or referral under similar circumstances, constitutes both racial discrimination and unlawful retaliation.

64. Following Plaintiff's arrest, an unknown person or persons posted a newspaper article about Plaintiff's arrest on Plaintiff's locker at the Water Distribution Department, where it could be seen by Plaintiff's coworkers. Plaintiff's coworkers laughed about the article and Plaintiff's arrest. This public humiliation was condoned or at minimum allowed by Defendants' supervisory personnel.

65. The publicity surrounding Plaintiff's arrest for alleged water theft — charges linked to an account not in his name and arising from an investigation triggered by the improper disclosure of his utility records — caused Plaintiff severe humiliation, emotional distress, and damage to his professional reputation.

## G. Discriminatory Denial of Light Duty Accommodation

66. On or about March 24, 2025, Plaintiff sustained an injury to his left wrist while performing work duties for the City of Elyria. The injury was work-related and entitled Plaintiff to workers' compensation benefits and, if medically restricted, accommodation under City policies and applicable law.

67. Plaintiff's treating physician released Plaintiff to return to work subject to the restriction that Plaintiff not use his left hand. This restriction was a

reasonable, physician-prescribed work limitation arising from a work-related injury.

68. Prior to Plaintiff's October 2024 complaint about Dave Rothgery, Plaintiff had been permitted to perform light-duty work when injured and unable to perform full physical duties. The City's prior practice of accommodating Plaintiff's work restrictions during prior injury periods establishes both that light-duty accommodation was available within the City's operational framework and that the City had chosen to make it available to Plaintiff in the past.

69. Following Plaintiff's October 2024 complaint, and in the context of the escalating pattern of retaliatory adverse actions, the Water Distribution Department determined that it could not accommodate Plaintiff's restriction against using his left hand, despite its prior practice of accommodating Plaintiff during injury-related restrictions. As a result, Plaintiff has remained off work since March 24, 2025.

70. The denial of light duty accommodation to Plaintiff stands in direct contrast to the treatment of similarly situated white coworkers. Specifically, Tyler Huge, a white employee of the Water Distribution Department, was permitted to continue working while injured with an ankle injury. Defendants have attempted to distinguish Huge's situation by claiming his injury was less severe or that he returned to work without restrictions. These asserted distinctions are pretextual: Plaintiff was never given the opportunity to demonstrate that he could perform available light-duty tasks with one-hand restrictions, and the City made no genuine

21

effort to identify suitable light-duty work consistent with Plaintiff's medical restrictions — in sharp contrast to the accommodations extended to white employees.

71. The denial of light-duty accommodation to Plaintiff, following a work-related injury, while accommodating white employees in analogous situations, constitutes disparate treatment based on race in violation of Title VII, 42 U.S.C. § 2000e-2, and Ohio Revised Code § 4112.02(A). The denial also constitutes an act of retaliation for Plaintiff's October 2024 protected complaint.

72. Plaintiff's wrist injury, which imposed medically determined restrictions on his ability to use his left hand, constituted a physical impairment affecting a major life activity within the meaning of Ohio Revised Code § 4112.01(A)(13). Defendants were required to engage in an interactive process to determine whether Plaintiff could be accommodated, and failed to do so. The failure to accommodate Plaintiff's disability constitutes disability discrimination in violation of Ohio Revised Code § 4112.02(A).

## H. Termination of Salary Continuation

73. On January 23, 2026, Defendants sent Plaintiff a written letter informing him that his salary continuation would be ending effective January 24, 2026. The termination of salary continuation effectively eliminated Plaintiff's compensation while he remained off work due to an injury sustained in the line of duty — an injury for which the City had denied him a light-duty accommodation.

74. The termination of salary continuation on January 24, 2026 constituted an adverse employment action, individually and in the context of the cumulative pattern of retaliatory and discriminatory actions taken against Plaintiff. The action was taken approximately five months after Plaintiff's EEOC Charge was filed on August 6, 2025, placing the termination of salary continuation in direct temporal proximity to Plaintiff's exercise of protected rights.

75. Similarly situated white employees who sustained work-related injuries and were unable to perform full duties were not subjected to the same termination of salary continuation under comparable circumstances. The selective termination of Plaintiff's salary continuation reflects continued discrimination based on race and retaliation for his protected activity.

## I.  The City's Unlawful Customs, Policies, and Deliberate Indifference

76. The City of Elyria, as Plaintiff's employer and as the entity responsible for setting and enforcing workplace policies, is liable under Title VII for the unlawful conduct described herein. In addition, the City is liable under 42 U.S.C. § 1983 based on one or more of the following bases: (a) an unconstitutional official policy; (b) an unconstitutional custom or practice; (c) deliberate indifference to a known or obvious risk of constitutional violation; and/or (d) the actions of a final policymaker.

77. The City of Elyria maintained a custom and practice of tolerating racial harassment in the Water Distribution Department. The harassment of Plaintiff by his supervisor continued unabated for approximately seven years without any corrective action by the City. The extended,

uninterrupted nature of the harassment — perpetrated by a department-level manager — demonstrates that supervisory management knew or should have known of the hostile work environment and chose to take no corrective action.

78. The City failed to maintain effective anti-discrimination and anti-harassment policies that would have prevented or deterred Rothgery's conduct. The City further failed to train supervisory employees, including Rothgery and Pyanowski, in the requirements of federal and state anti-discrimination law. These failures to train constitute deliberate indifference under City of Canton v. Harris, 489 U.S. 378 (1989), and were the moving force behind the constitutional and statutory violations Plaintiff suffered.

79. The City failed to maintain any effective, confidential, and non-retaliatory mechanism by which employees could safely report harassment or discrimination. The only grievance channel available to Plaintiff was the union, whose president was the harassing supervisor's own sister-in-law. The absence of any independent reporting mechanism — and the City's failure to correct the structural conflict of interest in the union's complaint process — constituted deliberate indifference to the obvious risk that harassment would go unreported and uncorrected.

80. Pyanowski, as Safety-Service Director, was a final policymaker for the City of Elyria with respect to employment decisions in the Water Distribution Department, including the referral of employees for criminal prosecution and the management of work-related injury leave and salary continuation.

His decisions to refer Plaintiff for criminal investigation based on unsubstantiated allegations and to terminate Plaintiff's salary continuation are directly attributable to the City as official policy decisions.

## J.  The Conspiracy Among Individual Defendants

81.  Defendants Dave Rothgery, Gina Rothgery, and Dan Hackathorn acted in concert, by prior agreement and with a common unlawful purpose, to retaliate against Plaintiff for exercising his legal rights. The conspiracy began at the moment Gina Rothgery disclosed Plaintiff's complaint to Dave Rothgery rather than processing it through proper grievance channels, and continued through the coordinated arrangement of the October 25, 2024 retaliatory meeting.

82.  The coordinated actions of these three individuals — Gina Rothgery disclosing the complaint, Gina Rothgery and Hackathorn jointly arranging the meeting, and Rothgery delivering threats at the meeting — evidence a unified, coordinated scheme to suppress Plaintiff's complaint, intimidate him, and punish him for raising concerns.

83.  The conspiracy was motivated, in substantial part, by racial animus. Rothgery's use of racially charged language during the October 25 recorded meeting — including the phrase "going off the reservation" directed at Plaintiff, the only Black employee in the department — in the context of years of racial harassment, demonstrates that racial animus was part of the motivation for the conspiratorial retaliation.

25

84. Defendant Chris Pyanowski participated in and furthered the retaliation through his official actions as Safety-Service Director, including his conduct during the April 11, 2025 investigatory meeting, his decision to refer the matter to law enforcement despite the lack of evidence implicating Plaintiff, and his approval of the termination of Plaintiff's salary continuation.

85. As a direct and proximate result of the acts and omissions of Defendants, individually and in conspiracy, Plaintiff has suffered and continues to suffer substantial injury and damages, including: lost wages and benefits; loss of salary continuation; loss of career advancement opportunities; physical and emotional distress, anxiety, depression, sleeplessness, and mental anguish; damage to professional reputation; public humiliation; and costs and expenses associated with responding to a baseless criminal investigation and prosecution.

**COUNT I — HOSTILE WORK ENVIRONMENT — RACE-BASED HARASSMENT**
*(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1))*
(Against Defendant City of Elyria)

86. Plaintiff realleges and incorporates by reference paragraphs 1 through 85 of this Complaint as if fully rewritten herein.

87. Plaintiff, as an African American male, is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

88. Throughout Plaintiff's employment with the City from May 2018 through at least April 2025, Defendant Dave Rothgery, in his capacity as Plaintiff's direct supervisor, subjected Plaintiff to unwelcome racial harassment by

26

transmitting racially offensive and degrading images, messages, and other content to Plaintiff via electronic and online communications. Racial jokes and racially offensive comments were also commonplace in the Water Distribution Department workplace.

89. The racial harassment to which Plaintiff was subjected was severe, pervasive, and both objectively and subjectively offensive. The conduct was: (a) severe in that it involved explicitly racist content targeting Black individuals transmitted directly by Plaintiff's supervisor; and (b) pervasive in that it continued for approximately seven years throughout Plaintiff's employment, without interruption, on a recurring basis. A reasonable person in Plaintiff's position would find, and Plaintiff did find, the conduct hostile and abusive.

90. The racial harassment was directed at Plaintiff specifically because of his race and altered the terms, conditions, and privileges of Plaintiff's employment, creating an abusive and hostile working environment within the meaning of Title VII.

91. Defendant Dave Rothgery was Plaintiff's supervisor within the meaning of *Vance v. Ball State University*, 570 U.S. 421, 424 (2013), because Rothgery was empowered to take tangible employment actions against Plaintiff, including assigning work, evaluating performance, recommending discipline, and affecting the terms and conditions of Plaintiff's employment. The City is therefore subject to vicarious liability for Rothgery's harassing conduct without the need to show negligence.

27

92. The *Faragher-Ellerth* affirmative defense is unavailable to the City because: (a) Rothgery's harassment culminated in tangible employment actions against Plaintiff in the form of disciplinary actions, denial of accommodation, and termination of salary continuation; and (b) Plaintiff's failure to report the harassment earlier was reasonable, given Rothgery's supervisory authority over Plaintiff, the absence of any independent and safe reporting mechanism, and the inherent conflict of interest in the union's complaint structure.

93. As a direct and proximate result of the race-based hostile work environment created and sustained by Defendants, Plaintiff has suffered and continues to suffer damages, including severe emotional distress, mental anguish, anxiety, loss of enjoyment of life, humiliation, and damage to his professional reputation, all in amounts to be proven at trial.

**COUNT II — HOSTILE WORK ENVIRONMENT — SEXUAL HARASSMENT**
*(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1))*
(Against Defendant City of Elyria)

94. Plaintiff realleges and incorporates by reference paragraphs 1 through 93 of this Complaint as if fully rewritten herein.

95. In addition to the racial harassment described above, Defendant Rothgery subjected Plaintiff to unwelcome, unsolicited, and sexually explicit communications, including sexually explicit images, videos, and messages, transmitted to Plaintiff via electronic and online platforms throughout the same period — May 2018 through at least April 2025.

96. The sexually explicit communications were unwelcome to Plaintiff. Plaintiff did not consent to, invite, or encourage them, and did not

28

reciprocate or participate in them. Plaintiff endured the communications because of the power Rothgery held over his employment.

97. The sexually explicit communications were sufficiently severe and pervasive to constitute a hostile work environment on the basis of sex within the meaning of Title VII, 42 U.S.C. § 2000e-2(a)(1), and *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986). The conduct would cause a reasonable person to perceive the work environment as hostile or abusive, and Plaintiff did in fact experience the environment as hostile and abusive.

98. The sexual harassment altered the terms, conditions, and privileges of Plaintiff's employment in violation of Title VII.

99. For the same reasons stated in Count I, the City is vicariously liable for Rothgery's sexually harassing conduct, and the *Faragher-Ellerth* affirmative defense is unavailable.

100. As a direct and proximate result of the sex-based hostile work environment created and sustained by Defendants, Plaintiff has suffered and continues to suffer damages, including severe emotional distress, mental anguish, anxiety, loss of enjoyment of life, humiliation, and damage to his professional reputation, all in amounts to be proven at trial.

**COUNT III — RACE DISCRIMINATION — DISPARATE TREATMENT**
*(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1))*
(Against Defendant City of Elyria)

101. Plaintiff realleges and incorporates by reference paragraphs 1 through 100 of this Complaint as if fully rewritten herein.

102. Plaintiff, as an African American male, is a member of a protected class under Title VII.

103. Plaintiff was qualified for the position of Field Crewman II and performed his job duties competently throughout the period of his employment.

104. Defendants subjected Plaintiff to multiple adverse employment actions because of his race, including but not limited to: (a) pretextual disciplinary warnings for tardiness issued on October 24, 2024 and November 6, 2024, immediately following Plaintiff's complaint; (b) a criminal referral to law enforcement based on unsubstantiated water theft allegations; (c) the denial of light-duty work accommodation following Plaintiff's March 2025 work injury; and (d) the termination of Plaintiff's salary continuation effective January 24, 2026.

105. Plaintiff was treated less favorably than similarly situated employees outside the protected class with respect to each of the foregoing adverse employment actions. Specifically: (a) Gary Broud, a white coworker, was not issued written warnings for tardiness despite arriving late to work on one or more occasions; (b) Tyler Huge, a white coworker, was permitted to work with a work-related injury without being denied light-duty accommodation, despite Defendants' contentions regarding the degree of his restriction; (c) no white employees of the Water Distribution Department were subjected to criminal referral for water theft based on comparable or similarly thin factual predication.

106. The legitimate, nondiscriminatory reasons that Defendants may offer for the adverse employment actions are pretextual. The close temporal proximity between Plaintiff's protected complaint and the adverse actions, the sudden reversal of prior practices (e.g., permitting light duty, not

30

enforcing attendance policies), and the disparate treatment of similarly situated white employees collectively establish that the proffered reasons are a cover for race discrimination.

107.  The discriminatory treatment alleged herein constitutes intentional race discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

108.  As a direct and proximate result of Defendants' race discrimination, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, and damage to his professional reputation, all in amounts to be proven at trial.

### COUNT IV — RETALIATION
*(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a))*
(Against Defendant City of Elyria)

109.  Plaintiff realleges and incorporates by reference paragraphs 1 through 108 of this Complaint as if fully rewritten herein.

110.  Plaintiff engaged in protected activity within the meaning of Title VII, 42 U.S.C. § 2000e-3(a), by: (a) on October 23, 2024, complaining to the union president about Dave Rothgery's disposal of city property — an activity that Plaintiff reasonably and in good faith understood to constitute opposition to conduct he believed violated his workplace rights and the law; (b) opposing the racial and sexual harassment to which he had been subjected throughout his employment; (c) filing an EEOC Charge of Discrimination on August 6, 2025, alleging race discrimination, sexual harassment, and retaliation; and (d) otherwise opposing practices that Plaintiff reasonably believed to be unlawful under Title VII.

31

111. Defendants had actual knowledge of Plaintiff's protected activity. Defendant Rothgery was specifically confronted by Plaintiff's October 23, 2024 complaint through Gina Rothgery's disclosure, and the City received notice of Plaintiff's EEOC Charge on or around August 6, 2025.

112. Following Plaintiff's protected activity, Defendants took the following material adverse employment actions against Plaintiff:

   a. Written warning for tardiness issued on October 24, 2024 — one (1) day after Plaintiff's union complaint;

   b. Written warning for sick leave usage issued on November 6, 2024;

   c. Referral to law enforcement for criminal investigation in April 2025, resulting in Plaintiff's arrest;

   d. Denial of light-duty accommodation following Plaintiff's March 24, 2025 work injury;

   e. Termination of salary continuation effective January 24, 2026, approximately five months after Plaintiff's EEOC Charge; and

   f. Permitting the public posting of an article about Plaintiff's arrest on Plaintiff's locker in the workplace.

113. A causal connection exists between Plaintiff's protected activity and each adverse employment action. The causal connection is established by: (a) the extraordinary temporal proximity between Plaintiff's October 23, 2024 complaint and the October 24, 2024 disciplinary warning; (b) the audio-recorded evidence of Rothgery's anger about Plaintiff's complaint, expressed the very next day; (c) the pattern of escalating adverse actions

32

following each instance of protected activity; and (d) the departure from prior practices immediately following Plaintiff's complaint.

114. But for Plaintiff's protected activity, the adverse employment actions described herein would not have been taken. Under either the "but-for" causation standard of University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338 (2013), or the "motivating factor" standard, the causal connection between Plaintiff's protected activity and the adverse employment actions is established by the evidence.

115. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, mental anguish, humiliation, and damage to his professional reputation, all in amounts to be proven at trial.

### COUNT V — RACE DISCRIMINATION IN EMPLOYMENT
*(42 U.S.C. § 1981 via 42 U.S.C. § 1983)*
(Against All Defendants)

116. Plaintiff realleges and incorporates by reference paragraphs 1 through 115 of this Complaint as if fully rewritten herein.

117. 42 U.S.C. § 1981 guarantees all persons within the United States the same right to make and enforce contracts as is enjoyed by white citizens. Employment constitutes a contractual relationship protected by § 1981.

118. Plaintiff, as an African American male, is a member of a racial minority whose right to make and enforce contracts on the same basis as white citizens is protected by § 1981.

119. Defendants, acting under color of state law, intentionally discriminated against Plaintiff on the basis of his race in the making, performance, and

33

enjoyment of his employment contract, including but not limited to: subjecting Plaintiff to racially hostile working conditions; discriminatorily denying Plaintiff the same terms and conditions of employment (including access to light-duty accommodation and salary continuation) as enjoyed by white employees; and retaliating against Plaintiff for opposing racial discrimination.

120. Defendant Dave Rothgery, in his individual capacity, is directly liable under § 1981 for subjecting Plaintiff to racial harassment and for participating in the retaliatory adverse employment actions described herein.

121. Defendant Chris Pyanowski, in his individual capacity, is directly liable under § 1981 for participating in the racially discriminatory and retaliatory decisions to refer Plaintiff for criminal prosecution, deny light-duty accommodation, and terminate salary continuation.

122. Defendant City of Elyria is liable under § 1983 as the vehicle for Plaintiff's § 1981 claim against a public entity, consistent with *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989). The City's liability is established under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), through its customs, practices, and deliberate indifference, as described in the factual allegations above.

123. As a direct and proximate result of Defendants' violations of § 1981, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, humiliation, and damage to his professional reputation. Because Defendants acted with malice or reckless

34

indifference to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages against the individual Defendants.

## COUNT VI — VIOLATION OF EQUAL PROTECTION RIGHTS — RACE
*(42 U.S.C. § 1983; U.S. Const. amend. XIV)*
(Against Defendants Rothgery and Pyanowski, Individually; and City of Elyria)

124. Plaintiff realleges and incorporates by reference paragraphs 1 through 123 of this Complaint as if fully rewritten herein.

125. The Fourteenth Amendment to the United States Constitution guarantees Plaintiff equal protection of the laws and prohibits state actors from intentionally treating individuals differently on the basis of race.

126. At all relevant times, Defendants Rothgery and Pyanowski were persons acting under color of state law within the meaning of 42 U.S.C. § 1983. Their employment and authority as City of Elyria officials constituted state action.

127. Defendants Rothgery and Pyanowski intentionally discriminated against Plaintiff on the basis of his race in violation of the Equal Protection Clause of the Fourteenth Amendment by: (a) subjecting Plaintiff, the only Black employee in the Water Distribution Department, to racially hostile and discriminatory treatment that was not imposed on similarly situated white employees; (b) taking adverse employment actions against Plaintiff that were not taken against white employees in comparable circumstances; and (c) engaging in and facilitating retaliatory conduct motivated in substantial part by Plaintiff's race and his opposition to race discrimination.

128. Defendant City of Elyria is liable under § 1983 because: (a) Pyanowski, as Safety-Service Director, was a final policymaker for the City with respect to employment decisions affecting the Water Distribution Department, and his racially discriminatory decisions constitute official policy under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); (b) the City maintained a custom and practice of tolerating racial harassment and discrimination in the Water Distribution Department over a period of approximately seven years, of which the City knew or should have known; and (c) the City was deliberately indifferent to the known risk of racial discrimination by failing to train supervisors, failing to maintain effective reporting mechanisms, and failing to take corrective action.

129. Defendants' violation of Plaintiff's equal protection rights was intentional, willful, and undertaken with deliberate indifference to Plaintiff's clearly established constitutional rights.

130. As a direct and proximate result of Defendants' violations of the Equal Protection Clause, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, humiliation, and damage to his professional reputation. Plaintiff is entitled to punitive damages against Defendants Rothgery and Pyanowski in their individual capacities.

**COUNT VII — FIRST AMENDMENT RETALIATION**
*(42 U.S.C. § 1983; U.S. Const. amend. I)*
(Against Defendants Rothgery, Pyanowski, Gina Rothgery, and Hackathorn, Individually)

131. Plaintiff realleges and incorporates by reference paragraphs 1 through 130 of this Complaint as if fully rewritten herein.

36

132. The First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, protects the right of public employees to speak as citizens on matters of public concern without suffering retaliation.

133. Plaintiff's October 23, 2024 complaint to the union president regarding Dave Rothgery's unauthorized disposal of city-owned property constituted speech by Plaintiff as a citizen on a matter of public concern — specifically, the alleged misappropriation or unauthorized disposition of public property by a municipal official. Reporting the potential misuse of public resources touches on a matter of public concern within the meaning of *Connick v. Myers*, 461 U.S. 138 (1983), and its progeny. This complaint was not made pursuant to Plaintiff's official duties as a Field Crewman II; rather, it was made through the union as a matter of personal civic concern.

134. Plaintiff's speech was protected under the First Amendment because: (a) the speech touched on a matter of public concern; (b) Plaintiff spoke as a citizen rather than pursuant to his official duties as a city water distribution worker, consistent with *Garcetti v. Ce*ballos, 547 U.S. 410 (2006); and (c) Plaintiff's interest in speaking on the matter outweighed any legitimate interest the City had in the efficiency of its operations.

135. Individual Defendants knew of Plaintiff's protected speech. Dave Rothgery was informed of Plaintiff's complaint by Gina Rothgery within hours of Plaintiff making it; Gina Rothgery and Hackathorn directly participated in the response to Plaintiff's complaint; and Pyanowski was aware of the

background of Plaintiff's employment disputes through his role in the investigatory and disciplinary process.

136. In direct retaliation for Plaintiff's protected speech, individual Defendants took adverse actions that would deter a person of ordinary firmness from exercising First Amendment rights, including the threatening meeting of October 25, 2024; the immediate pretextual disciplinary actions; the baseless criminal referral; the denial of light-duty accommodation; and the termination of salary continuation.

137. The retaliation was a substantial or motivating factor in each of the adverse actions taken against Plaintiff, within the meaning of *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977).

138. As a direct and proximate result of Defendants' retaliation for Plaintiff's protected speech, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, humiliation, and damage to his professional reputation. Plaintiff is entitled to punitive damages against the individual Defendants in their individual capacities.

### COUNT VIII — CONSPIRACY TO DEPRIVE CIVIL RIGHTS
*(42 U.S.C. § 1985(3))*
(Against Defendants Rothgery, Gina Rothgery, Hackathorn, and Pyanowski)

139. Plaintiff realleges and incorporates by reference paragraphs 1 through 138 of this Complaint as if fully rewritten herein.

140. 42 U.S.C. § 1985(3) prohibits two or more persons from conspiring to deprive any person of the equal protection of the laws or of equal privileges and immunities under the laws, where the conspiracy is motivated by racial animus.

141. Defendants Dave Rothgery, Gina Rothgery, Hackathorn, and Pyanowski conspired together, by agreement and coordinated action, to deprive Plaintiff of his rights under the Equal Protection Clause of the Fourteenth Amendment, the First Amendment, and Title VII, motivated in substantial part by racial animus — specifically, animus toward Plaintiff as the only Black employee in the Water Distribution Department who had the temerity to complain about his supervisor's conduct.

142. The conspiracy and the overt acts in furtherance thereof include: (a) Gina Rothgery's disclosure of Plaintiff's complaint to Dave Rothgery in breach of any confidentiality obligation; (b) Gina Rothgery and Hackathorn's joint arrangement of the October 25, 2024 retaliatory meeting; (c) Dave Rothgery's delivery of threats at that meeting using racially charged language; (d) the subsequent coordinated imposition of pretextual disciplinary actions; (e) Pyanowski's referral of Plaintiff for criminal prosecution; and (f) the termination of salary continuation.

143. The conspiracy was motivated by racial animus, as evidenced by: (a) Rothgery's seven-year history of transmitting racially offensive content to Plaintiff; (b) Rothgery's use of the racially charged phrase "going off the reservation" in the recorded October 25 meeting; (c) the targeting of Plaintiff — the only Black employee in the department — for treatment that white employees did not experience; and (d) the sustained nature of the discriminatory and retaliatory conduct.

144. As a direct and proximate result of the conspiracy, Plaintiff was injured in his person, property, and employment, suffering lost wages and benefits,

emotional distress, reputational harm, and the other damages described herein.

145. Because Defendants acted with malice and reckless indifference to Plaintiff's federally protected civil rights, Plaintiff is entitled to punitive damages against each individual Defendant.

**COUNT IX — HOSTILE WORK ENVIRONMENT — RACE-BASED HARASSMENT**
*(Ohio Revised Code § 4112.02(A))*
(Against Defendants City of Elyria and Dave Rothgery)

146. Plaintiff realleges and incorporates by reference paragraphs 1 through 145 of this Complaint as if fully rewritten herein.

147. Ohio Revised Code § 4112.02(A) prohibits any employer or employer's agent from discriminating against an employee in the terms, conditions, or privileges of employment because of race. Under Ohio Supreme Court precedent, an individual supervisor may be held personally liable under § 4112.02. *Genaro v. Central Transport, Inc.*, 84 Ohio St.3d 293 (1999).

148. For the reasons stated in Count I, the racial harassment to which Plaintiff was subjected created an objectively and subjectively hostile work environment, based on Plaintiff's race, in violation of Ohio Revised Code § 4112.02(A). The conduct was severe and pervasive within the meaning of Ohio law.

149. Defendant City of Elyria, as Plaintiff's employer, is vicariously liable for the hostile work environment created by Defendant Rothgery, a supervisory employee. Defendant Rothgery is individually liable as a

40

supervisor and agent of the employer who created and sustained the hostile work environment.

150. As a direct and proximate result of the race-based hostile work environment in violation of Ohio Revised Code § 4112.02(A), Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, mental anguish, humiliation, and damage to his professional reputation, all in amounts to be proven at trial.

## COUNT X — HOSTILE WORK ENVIRONMENT — SEXUAL HARASSMENT
*(Ohio Revised Code § 4112.02(A))*
(Against Defendants City of Elyria and Dave Rothgery)

151. Plaintiff realleges and incorporates by reference paragraphs 1 through 150 of this Complaint as if fully rewritten herein.

152. For the reasons stated in Count II, the sexually explicit communications transmitted to Plaintiff by Rothgery created an objectively and subjectively hostile work environment based on sex, in violation of Ohio Revised Code § 4112.02(A).

153. Defendant City of Elyria is vicariously liable for the sexually hostile work environment created by its supervisor Rothgery. Defendant Rothgery is individually liable under § 4112.02(A) and *Genaro*.

154. As a direct and proximate result of the sex-based hostile work environment in violation of Ohio Revised Code § 4112.02(A), Plaintiff has suffered and continues to suffer damages as described herein.

## COUNT XI — RACE DISCRIMINATION — DISPARATE TREATMENT
*(Ohio Revised Code § 4112.02(A))*
(Against Defendants City of Elyria and Dave Rothgery)

41

155. Plaintiff realleges and incorporates by reference paragraphs 1 through 154 of this Complaint as if fully rewritten herein.

156. Ohio Revised Code § 4112.02(A) prohibits employers and their agents from discriminating against any person with respect to hire, tenure, terms, conditions, or privileges of employment because of race. Individual supervisors are liable under this provision. Genaro, supra.

157. For the reasons set forth in Count III, Defendants discriminated against Plaintiff on the basis of race in the terms, conditions, and privileges of his employment, including through the pretextual disciplinary actions, the baseless criminal referral, the denial of light-duty accommodation, and the termination of salary continuation, while similarly situated white employees were treated more favorably. This conduct violates Ohio Revised Code § 4112.02(A).

158. As a direct and proximate result of Defendants' race discrimination under Ohio Revised Code § 4112.02(A), Plaintiff has suffered and continues to suffer damages as described herein.

### COUNT XII — DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE
*(Ohio Revised Code § 4112.02(A))*
(Against Defendants City of Elyria, Rothgery, and Pyanowski)

159. Plaintiff realleges and incorporates by reference paragraphs 1 through 158 of this Complaint as if fully rewritten herein.

160. Ohio Revised Code § 4112.02(A) prohibits discrimination against employees on the basis of disability. Ohio Revised Code § 4112.01(A)(13)

42

defines "disability" to include a "physical or mental impairment that substantially limits one or more major life activities of an individual."

161. Plaintiff's left wrist injury, sustained on March 24, 2025, resulting in a physician-prescribed restriction against using his left hand, constituted a physical impairment that substantially limited one or more of Plaintiff's major life activities, including the major life activities of lifting, grasping, manipulating objects, and performing manual tasks. Plaintiff is a person with a disability within the meaning of Ohio Revised Code § 4112.01(A)(13).

162. Alternatively, Plaintiff was regarded as having a physical impairment by Defendants, who treated his work restriction as an inability to perform his job duties, rendering him a person with a disability under Ohio Revised Code § 4112.01(A)(13)(b).

163. Plaintiff was otherwise qualified to perform the essential functions of the Field Crewman II position with a reasonable accommodation — specifically, a light-duty work assignment that did not require use of his left hand, consistent with the accommodation the City had previously provided to Plaintiff in prior injury situations.

164. Defendants were required to engage in an interactive process with Plaintiff to identify a reasonable accommodation, and to provide a reasonable accommodation unless doing so would impose an undue hardship. Defendants failed to engage in any good-faith interactive process and failed to provide a reasonable accommodation, instead categorically determining that no accommodation was possible — a determination

inconsistent with the City's own prior practice and with the accommodation extended to the white comparator employee Tyler Huge.

165. Defendants' failure to accommodate Plaintiff's disability, combined with the discriminatory denial of the opportunity to work light duty that was provided to similarly situated non-disabled or white employees, constitutes disability discrimination and failure to accommodate in violation of Ohio Revised Code § 4112.02(A).

166. As a direct and proximate result of Defendants' disability discrimination and failure to accommodate, Plaintiff suffered lost wages from March 24, 2025 through the present, emotional distress, and related damages.

**COUNT XIII — RETALIATION**
*(Ohio Revised Code § 4112.02(I))*
(Against All Defendants)

167. Plaintiff realleges and incorporates by reference paragraphs 1 through 166 of this Complaint as if fully rewritten herein.

168. Ohio Revised Code § 4112.02(I) prohibits any person from discriminating in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in Chapter 4112.

169. Plaintiff engaged in protected activity under Ohio Revised Code § 4112.02(I) by: (a) opposing the pattern of racial and sexual harassment to which he was subjected in the workplace; (b) complaining to the union president on October 23, 2024 about his supervisor's conduct, which Plaintiff reasonably believed constituted an unlawful discriminatory and unlawful practice; and (c) filing an EEOC/OCRC Charge of Discrimination on August 6, 2025.

44

170. All Defendants had knowledge of Plaintiff's protected activity, as alleged in the factual allegations above.

171. Following Plaintiff's protected activity, Defendants subjected Plaintiff to the adverse employment actions described in the factual allegations, each of which would materially deter a reasonable employee from engaging in protected activity.

172. A causal connection exists between Plaintiff's protected activity and each adverse employment action, as established by temporal proximity, the audio-recorded evidence of retaliatory motive, and the pattern of escalating adverse actions.

173. As a direct and proximate result of Defendants' retaliation under Ohio Revised Code § 4112.02(I), Plaintiff has suffered and continues to suffer damages as described herein.

**COUNT XIV — AIDING AND ABETTING UNLAWFUL DISCRIMINATORY PRACTICES**
*(Ohio Revised Code § 4112.02(J))*
(Against Defendants Gina Rothgery, Hackathorn, and Pyanowski)

174. Plaintiff realleges and incorporates by reference paragraphs 1 through 173 of this Complaint as if fully rewritten herein.

175. Ohio Revised Code § 4112.02(J) makes it an unlawful discriminatory practice "for any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice."

176. Defendant Gina Rothgery aided and abetted Dave Rothgery's discriminatory and retaliatory conduct by: (a) disclosing Plaintiff's October 23, 2024 complaint to Dave Rothgery rather than processing it

45

neutrally; (b) arranging the October 25, 2024 meeting that functioned as a vehicle for retaliation rather than a grievance resolution; and (c) preventing Plaintiff from accessing a functional and unbiased grievance mechanism, thereby enabling Rothgery's continued discriminatory and retaliatory treatment of Plaintiff.

177. Defendant Hackathorn aided and abetted the unlawful discriminatory and retaliatory practices by jointly arranging the October 25, 2024 meeting with the knowledge that Dave Rothgery was angry about Plaintiff's complaint, thereby facilitating the threatening meeting.

178. Defendant Pyanowski aided and abetted the unlawful discriminatory and retaliatory practices by: (a) participating in the April 11, 2025 investigatory meeting regarding the baseless water theft allegations; (b) referring Plaintiff for criminal prosecution based on unsubstantiated claims; and (c) participating in the decisions to deny light-duty accommodation and terminate salary continuation.

179. As a direct and proximate result of Defendants' aiding and abetting unlawful discriminatory practices in violation of Ohio Revised Code § 4112.02(J), Plaintiff has suffered and continues to suffer damages as described herein.

### COUNT XV — LABOR ORGANIZATION RETALIATION AND DISCRIMINATION
*(Ohio Revised Code § 4112.02(H) and (I))*
(Against Defendants Gina Rothgery and Hackathorn)

180. Plaintiff realleges and incorporates by reference paragraphs 1 through 179 of this Complaint as if fully rewritten herein.

46

181. Ohio Revised Code § 4112.02(H) prohibits a labor organization from discriminating against any member because of race, sex, or other protected characteristics. Ohio Revised Code § 4112.02(I) prohibits retaliation against any person who has opposed unlawful discriminatory practices.

182. Defendants Gina Rothgery and Hackathorn, in their capacities as officers of the labor organization representing Plaintiff, discriminated against Plaintiff on the basis of race by: (a) failing to provide Plaintiff with the same quality of representation and grievance processing that would have been extended to a white member under the same circumstances; (b) affirmatively disclosing Plaintiff's confidential complaint to the supervisor against whom the complaint was made; and (c) facilitating the retaliation against Plaintiff rather than protecting him.

183. The conduct of Gina Rothgery and Hackathorn as described herein constitutes discriminatory and retaliatory treatment of Plaintiff as a union member, in violation of Ohio Revised Code § 4112.02(H) and (I).

184. As a direct and proximate result of Defendants' violations of Ohio Revised Code § 4112.02(H) and (I), Plaintiff has suffered and continues to suffer damages as described herein.

### COUNT XVI — WHISTLEBLOWER RETALIATION
*(Ohio Revised Code § 4113.52)*
(Against Defendant City of Elyria)

185. Plaintiff realleges and incorporates by reference paragraphs 1 through 184 of this Complaint as if fully rewritten herein.

186. Ohio Revised Code § 4113.52 prohibits employers from taking any disciplinary or retaliatory action against an employee because the employee made a report or disclosed information that the employee reasonably believed evidenced a violation of any state or federal statute, ordinance, rule, or regulation, or any matter of public concern.

187. Plaintiff reasonably believed that Defendant Dave Rothgery's unauthorized disposal of city-owned chairs from the workplace mezzanine constituted a potential violation of applicable statutes, regulations, and city ordinances governing the disposition of public property, including potentially Ohio Revised Code § 2921.41 (theft in office), applicable city ordinances governing municipal assets, and policies regarding the use and disposal of public property.

188. Plaintiff orally communicated his concern about Dave Rothgery's disposal of city property to Gina Rothgery, in her capacity as union president, on October 23, 2024. Plaintiff reported this conduct to the union president, the representative designated to receive workplace complaints on behalf of employees, because Plaintiff could not safely report directly to Rothgery, who was both the subject of the complaint and Plaintiff's direct supervisor.

189. Plaintiff had a reasonable good-faith belief that the conduct he reported violated applicable law or regulation, satisfying the subjective element of the whistleblower protection statute. His belief was also objectively reasonable, given that Rothgery himself admitted in the audio-recorded October 25, 2024 meeting that he had removed the chairs, while claiming

authority to do so — a question of law and policy that was legitimately in dispute.

190. Defendant City of Elyria, through its agents and supervisory personnel, took adverse employment actions against Plaintiff because of his report, including the immediate issuance of a pretextual tardiness warning on October 24, 2024 — the day after Plaintiff's report — followed by the cascade of adverse actions described herein.

191. The close temporal proximity between Plaintiff's report on October 23, 2024 and the first adverse action on October 24, 2024, combined with the audio-recorded evidence of Rothgery's anger about the report and the absence of any prior disciplinary history for tardiness, establishes that the adverse actions were taken in retaliation for Plaintiff's report.

192. As a direct and proximate result of Defendants' whistleblower retaliation in violation of Ohio Revised Code § 4113.52, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, emotional distress, and other compensatory damages. Plaintiff is also entitled to reinstatement, back pay with interest, and attorney's fees as provided by the statute.

**COUNT XVII — TORTIOUS VIOLATION OF PUBLIC POLICY (CONSTRUCTIVE/WRONGFUL DISCHARGE)**
*(Ohio Common Law; Greeley v. Miami Valley Maintenance Contractors, Inc., 49 Ohio St.3d 228 (1990))*
(Against Defendant City of Elyria)

193. Plaintiff realleges and incorporates by reference paragraphs 1 through 192 of this Complaint as if fully rewritten herein.

49

194. Ohio recognizes a tort claim for wrongful discharge in violation of public policy where an employer's discharge of an employee contravenes a sufficiently clear public policy expressed in the Ohio or United States Constitution, statute, administrative rule, or common law. *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228 (1990); *Collins v. Rizkana*, 73 Ohio St.3d 65 (1995).

195. The public policies implicated by Defendants' conduct include: (a) the clear public policy against race discrimination and sexual harassment in the workplace, embodied in Ohio Revised Code Chapter 4112 and Title VII of the Civil Rights Act; (b) the clear public policy protecting employees who report potential violations of law or misuse of public property, embodied in Ohio Revised Code § 4113.52; and (c) the clear public policy against retaliation for opposing unlawful employment practices, embodied in Ohio Revised Code § 4112.02(I) and Title VII, 42 U.S.C. § 2000e-3(a).

196. Defendants' conduct — including the sustained campaign of harassment, the retaliatory adverse actions, the baseless criminal referral, the denial of accommodation, and the termination of salary continuation — caused Plaintiff to be constructively and/or actually discharged from his employment. The cumulative effect of the adversarial, hostile, retaliatory, and unlawful treatment to which Plaintiff was subjected rendered his continued employment objectively intolerable.

197. Defendants' discharge of Plaintiff violated clearly articulated and applicable public policies and was the product of Defendants' exercise of their employment authority in a manner that contravened those policies.

198. As a direct and proximate result of Defendants' tortious violation of public policy, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, loss of earning capacity, emotional distress, mental anguish, humiliation, and damage to his professional reputation, all in amounts to be proven at trial.

## COUNT XVIII — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(Ohio Common Law)*
(Against Defendants Dave Rothgery, Gina Rothgery, Hackathorn, and Pyanowski, Individually)

199. Plaintiff realleges and incorporates by reference paragraphs 1 through 198 of this Complaint as if fully rewritten herein.

200. Under Ohio law, a defendant is liable for intentional infliction of emotional distress where the defendant: (a) intended to cause, or knew or should have known that his or her conduct would result in serious emotional distress to the plaintiff; (b) the conduct was extreme and outrageous; (c) the defendant's conduct was the proximate cause of plaintiff's psychic injury; and (d) the plaintiff suffered serious emotional distress. *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369 (1983).

201. The conduct of individual Defendants, as described in detail in the factual allegations, was extreme and outrageous beyond the bounds of decency. A direct supervisor's transmission of racial and sexually explicit content to his sole Black subordinate over a period of seven years, his use of his supervisory authority to compel the subordinate's silence, his use of racially charged language when confronting the subordinate for reporting his conduct, and his orchestration of a sustained campaign of retaliatory

discipline culminating in a baseless criminal referral and economic destruction, constitutes conduct that no reasonable person should be expected to endure.

202. Defendant Dave Rothgery knew or should have known that his conduct — both the years of racial and sexual harassment and the subsequent campaign of retaliatory intimidation and abuse — would cause Plaintiff to suffer serious emotional distress.

203. Defendants Gina Rothgery and Hackathorn knew or should have known that their active participation in suppressing Plaintiff's complaint, arranging a meeting designed to intimidate him, and facilitating Rothgery's continued retaliation would cause Plaintiff serious emotional distress.

204. Defendant Pyanowski knew or should have known that initiating a baseless criminal referral against Plaintiff — resulting in his arrest and public humiliation — and then terminating his salary continuation while he was on medically restricted leave would cause Plaintiff serious emotional distress.

205. As a direct and proximate result of individual Defendants' intentional infliction of emotional distress, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, anxiety, depression, sleeplessness, humiliation, and loss of enjoyment of life. Because individual Defendants acted with actual malice and in conscious disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

**COUNT XIX — NEGLIGENT SUPERVISION AND RETENTION**

52

*(Ohio Common Law)*
(Against Defendant City of Elyria)

206. Plaintiff realleges and incorporates by reference paragraphs 1 through 205 of this Complaint as if fully rewritten herein.

207. Under Ohio law, an employer has a duty to exercise reasonable care in the selection, supervision, and retention of its employees, and may be held liable for negligent supervision or negligent retention where it knew or should have known that an employee posed an unreasonable risk of harm to others in the workplace.

208. At all relevant times, the City of Elyria owed Plaintiff a duty of reasonable care in its supervision and retention of supervisory employees, including Defendant Rothgery, with respect to their management of Plaintiff and other employees.

209. The City of Elyria knew or should have known, through the exercise of reasonable supervisory diligence, that Rothgery was engaging in a pattern of racial and sexual harassment against Plaintiff. The harassment was sustained for approximately seven years under Rothgery's direct supervision of Plaintiff — the only Black employee in the department. This extended, uninterrupted pattern of misconduct would have been discoverable through reasonable oversight.

210. The City breached its duty of care by: (a) failing to supervise Rothgery in a manner that would have detected and corrected his discriminatory and harassing conduct; (b) retaining Rothgery in a supervisory position over Plaintiff despite the conditions that, with reasonable oversight, would have

been known; (c) failing to implement any mechanism sufficient to detect harassment by a supervisor against the only Black employee in the department; and (d) failing to train supervisory employees on their obligations under federal and state anti-discrimination law.

211. The City's negligence in supervising and retaining Rothgery was the proximate cause of Plaintiff's injuries, including the seven years of hostile work environment, emotional distress, humiliation, and the cascade of subsequent retaliatory adverse actions.

212. As a direct and proximate result of the City's negligent supervision and retention, Plaintiff has suffered and continues to suffer damages as described herein.

### COUNT XX — CIVIL CONSPIRACY
*(Ohio Common Law)*
(Against Defendants Dave Rothgery, Gina Rothgery, Hackathorn, and Pyanowski)

213. Plaintiff realleges and incorporates by reference paragraphs 1 through 212 of this Complaint as if fully rewritten herein.

214. Under Ohio law, a civil conspiracy is a "malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Williams v. Aetna Finance Co.*, 83 Ohio St.3d 464 (1998).

215. Defendants Dave Rothgery, Gina Rothgery, Hackathorn, and Pyanowski entered into an agreement and understanding, by word and conduct, to retaliate against Plaintiff for having exercised his legal rights, and to suppress Plaintiff's ability to seek further redress for the discrimination and retaliation he had experienced. This common scheme was motivated

by a combination of racial animus, personal loyalty (in the case of Gina Rothgery's relationship to Dave Rothgery), and an intent to shield Rothgery's misconduct from exposure.

216.  The malicious combination of these Defendants operated to injure Plaintiff in ways that no single actor could accomplish alone: Gina Rothgery's role in suppressing the grievance was necessary to prevent any institutional check on Rothgery's retaliatory authority; Hackathorn's role in arranging the threatening meeting reinforced the coordinated intimidation effort; and Pyanowski's role in the criminal referral and salary continuation termination deployed the City's institutional power against Plaintiff in furtherance of the scheme.

217.  Each of the unlawful acts committed in furtherance of the conspiracy — including the disclosure of Plaintiff's grievance, the threatening meeting, the pretextual disciplinary actions, the baseless criminal referral, the denial of accommodation, and the termination of salary continuation — constitutes an independent unlawful act satisfying the requirement that a civil conspiracy be accompanied by an independent tortious or unlawful act.

218.  As a direct and proximate result of Defendants' civil conspiracy, Plaintiff has suffered and continues to suffer damages as described herein. Because the conspiracy was malicious and undertaken with conscious disregard for Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT XXI — INVASION OF PRIVACY
*(Ohio Common Law)*
(Against John Doe Defendants and Defendant Dave Rothgery)

219. Plaintiff realleges and incorporates by reference paragraphs 1 through 218 of this Complaint as if fully rewritten herein.

220. Ohio recognizes the tort of invasion of privacy, which encompasses: (a) intrusion upon the plaintiff's seclusion or private affairs, including the private control over personal information; (b) public disclosure of private facts; and (c) publicizing information that places the plaintiff in a false light before the public. *Housh v. Peth*, 165 Ohio St. 35 (1956).

221. John Doe Defendant(s), specifically the individual employed in the City of Elyria's utilities billing office who accessed Plaintiff's water account consumption information and transmitted it outside the scope of any legitimate business purpose, committed an intrusion upon Plaintiff's private affairs. Plaintiff's utility account information — including records of his water usage and service status — constituted private information to which Plaintiff had a reasonable expectation of privacy under Ohio law and applicable utility confidentiality provisions, including Ohio Revised Code § 4933.28. Access to that information by a utilities employee for the purpose of weaponizing it against a coworker was outside the scope of any legitimate purpose and constituted an unlawful intrusion.

222. The unauthorized access to and disclosure of Plaintiff's private utility account information was a substantial and unreasonable intrusion into Plaintiff's private affairs, of a nature that a reasonable person of ordinary sensibility would find highly offensive.

223. In addition, the posting of a newspaper article regarding Plaintiff's arrest for alleged water theft on Plaintiff's locker in a location visible to coworkers — with the result that coworkers laughed at Plaintiff — constituted public disclosure of information about Plaintiff in a manner that placed him in a false light, specifically the false light of being a criminal, when: (a) the water account was not in Plaintiff's name; (b) Plaintiff denied all wrongdoing; and (c) the entire investigation was triggered by the improper and unauthorized disclosure of Plaintiff's private utility records. Defendant Rothgery, who learned of the investigation through the improper disclosure chain and who had motive to humiliate Plaintiff, is responsible for the false light created by the orchestrated investigation and resulting publicity.

224. As a direct and proximate result of Defendants' invasion of Plaintiff's privacy, Plaintiff suffered humiliation, emotional distress, damage to his reputation, and the baseless criminal investigation that flowed from the improper use of his private utility records. Plaintiff is entitled to compensatory and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph Charley respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally as applicable, and grant the following relief:

A. A DECLARATION that Defendants' acts and omissions described herein violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981,

1983, and 1985(3), Ohio Revised Code Chapter 4112, and applicable Ohio common law;

B. INJUNCTIVE RELIEF requiring Defendants to cease and desist from all discriminatory, harassing, and retaliatory conduct; to implement and enforce effective anti-discrimination policies; to provide anti-discrimination training to all supervisory personnel; and to establish an independent, confidential, and non-retaliatory mechanism for reporting discrimination and harassment;

C. REINSTATEMENT of Plaintiff to his former position of Field Crewman II, or alternatively, FRONT PAY in lieu of reinstatement in an amount to be determined at trial;

D. BACK PAY for all wages and benefits lost as a result of Defendants' unlawful conduct, including all compensation that Plaintiff would have earned from the date of each adverse employment action through the date of judgment, with prejudgment interest as provided by law;

E. COMPENSATORY DAMAGES for past and future emotional distress, mental anguish, humiliation, loss of enjoyment of life, reputational harm, and all other non-economic losses proximately caused by Defendants' unlawful conduct, in an amount exceeding Ten Million Five Hundred Thousand Dollars ($10,500,000.00);

F. PUNITIVE DAMAGES against the individual Defendants — Dave Rothgery, Chris Pyanowski, Gina Bambi Rothgery, and Dan Hackathorn — in their individual capacities, in an amount sufficient to punish them for their malicious, willful, and reckless conduct and to deter similar conduct

58

in the future, as authorized by 42 U.S.C. § 1981a, 42 U.S.C. § 1983, and Ohio common law;

G. ATTORNEYS' FEES and costs as authorized by Title VII, 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 1988; Ohio Revised Code § 4112.02; and Ohio Revised Code § 4113.52;

H. PRE-JUDGMENT AND POST-JUDGMENT INTEREST on all damages awarded, to the fullest extent permitted by law;

I. Such OTHER AND FURTHER RELIEF as this Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and the Seventh Amendment to the United States Constitution, Plaintiff Joseph Charley hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

_____
**ALEX L. BODIFORD (0105076)**
**BODIFORD LEGAL GROUP LLC**
388 S. Main Street, Suite 440
Akron, Ohio 44311
Telephone: (330) 800-8810
Email: attorneyalexbodiford@gmail.com
Attorney for Plaintiff Joseph Charley

59

## VERIFICATION

I, Joseph Charley, declare under penalty of perjury under the laws of the United States of America that I am the Plaintiff in the above-captioned action, that I have read the foregoing Verified Complaint, and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 4th day of August, 2026.

JOSEPH CHARLEY, Plaintiff